CLAY, Circuit Judge,
dissenting.
The record in this case demonstrates that Charles Ball’s disabilities were substantially caused by chronic pain, including pain resulting from a 1996 mining explosion in which he injured his back. Ball was therefore entitled to receive benefits under the United Mine Workers of America 1974 Pension Plan, and neither the plan administrator’s decision denying him those benefits, nor the majority’s endorsement of that decision today, is supported by substantial evidence.
Under the Pension Plan, a miner is entitled to disability benefits when he “becomes totally disabled as a result of a mine accident.” The Pension Plan offers no further discussion of the causation standard to be employed. The majority purports to rely on Robertson v. Connors, 848 F.2d 472 (4th Cir.1988) to define “as a result of,” but actually employs a standard stricter than that adopted in Robertson. By doing so, and by glossing over the medical evidence in this case, the majority arrives at the erroneous conclusion that Ball is not disabled “as a result of a mine accident.”
In Robertson, the Fourth Circuit explained that under the Pension Plan, a miner’s total disability results from a mine accident when he is “injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiffs inability to perform his job and *865 for whatever medical and vocational reasons he is unable to perform an alternative job.” Robertson, 848 F.2d at 475 (emphasis added). The majority claims to adhere to this standard. However, it essentially ignores the italicized language, with disastrous results for Ball, as it was the pain caused by a mining accident, in combination with pain caused by other medical problems, which substantially caused his disabling depression and anxiety.
Before explaining further how Ball is able to meet the requirements of the Robertson causation standard, it is worth noting the lengths to which the majority goes to prevent Ball from relying on a lesser standard of causation. The majority strongly urges that Odom v. Mine Workers of Am. Health & Ret. Funds, 687 F.2d 843, 847 (6th Cir.1982), which authorizes a “contributed in some part” standard of causation, is inapplicable here. According to the majority, Odom is irrelevant because it was based in part on de minimis language set forth in the UMWA’s “Health Services Card Processing for Disabled Mine Workers,” and “there is no evidence in the record that this document is still in effect.”
The majority’s argument in this respect was never made by Defendants. In fact, Defendants have repeatedly articulated a causation standard identical or similar to that announced in Odom. In moving for summary judgment, Defendants cited Odom for the proposition that Ball was required to show either that a mine accident was “substantially responsible for” his disability, or merely that it “contributed in some part to” his disability. Defendants’ brief suggests that Ball need only establish a “causal link” between his mining accidents and his disability. Finally, the pension analyst who wrote the report denying Ball’s application for pension benefits framed the causation question as whether Ball’s disability was “related to a mine accident.”
There can be no doubt that Ball would prevail if he were simply required to show that his mine accident “contributed in some part” to his disability, or that his disability was “related to” a mine accident. This makes the majority’s reliance on arguments never articulated by Defendants to bar Ball from prevailing via such a showing particularly troubling. Defendants do not challenge the district court’s enunciation of the causation standard, and it is generally established that an appellate court will not entertain issues which are not raised in the appellant’s brief. Fed. R.App. P. 28(a); Bickel v. Korean Air Lines Co., Ltd. 96 F.3d 151, 153 (6th Cir. 1996); Priddy v. Edelman, 883 F.2d 438, 446 (6th Cir.1989).
The majority’s consideration of an argument not raised in the briefs, which resulted in its rejection of the Odom standard, would less troubling had it correctly applied the Robertson standard. A correct reading of Robertson makes it clear that Ball was entitled to benefits under the Plan if the pain he experienced as a result of injuries sustained in mining accidents, in combination with both pre- and post-existing factors, is substantially responsible for his disabling mood disorders. Ball satisfied this standard, and the plan administrator’s determination to the contrary is not supported by substantial evidence.
As the majority notes, the relevant disability for purposes of the Pension Plan is the disability determined by the Social Security Administration, which found that Ball was disabled by an anxiety disorder and depression. Though the majority gives it short shrift, there is much evidence, in the form of reports from various doctors and a social worker, that those disabilities were substantially caused by the great pain and suffering affecting Ball *866 as a result of the mining accidents and other injuries.
It is true that Ball’s pain and depression pre-dated the 1996 mine explosion in which he injured his back. However, it is also very clear that Ball’s pain was greatly exacerbated by the back injury. He was treated for the back injury with Percocet. Ball’s medical records indicate that tenderness in his lower back area and his limited range of motion remained over a month after the accident. Over the next few years, Ball’s complaints of back pain increased. In 1999, Ball was treated by Dr. John W. Gilbert, who diagnosed him with various back ailments and noted that his back pain dated back to the 1996 accident. Dr. George Privett performed an MRI on Ball in July 1999, finding several back problems and observing that Ball’s back pain was the result of the 1996 accident. In December of that year, Ball was seen by licensed social worker Deirdra Fisher Taylor, who observed signs of a major depressive disorder, and noted that “chronic pain and other issues” necessitated therapy. Taylor ascribed the pain to the 1996 explosion. On the same day, Ball saw Dr. Robert Evans, who diagnosed him with various back problems dating back to the 1996 accident.
In January 2000, Ball was examined by Dr. Christa Muckenhausen. She noted that Ball had severe low back pain radiating into both legs, as well as neck pain radiating into both shoulders, and observed that sitting, standing, or walking for more than five to ten minutes increased his pain. Dr. Muckenhausen further observed that Ball was “extremely anxious and depressed due to the persistant [sic] pain and the fact that he cannot function as he did previously.”
On February 14, 2000, psychiatrist Dr. Rosa Kathleen Riggs saw Ball and reviewed his medical records from six different doctors. Dr. Riggs diagnosed Ball with major depression, generalized anxiety disorder, chronic pain disorder with both psychological factors and a general medical condition consisting of various physical ailments, including back injury. She noted that these mental and physical health problems would make it impossible for Ball to “perform simple, repetitive tasks or relate to others or tolerate the stress and pressures associated with day to day work activities.” In April 2001, in response to a letter from Ball’s attorney, Dr. Riggs expressed her opinion that Ball is “totally and permanently disabled as a result of that mining accident in 1996.” Dr. Riggs explained that the mining accident was the cause of Ball’s depression and pain.
Dr. Morfesis saw Ball again on March 13, 2000, for complaints of diffuse arthritis pain, fever blister, and back pain with weakness of the left leg; Dr. Morfesis noted that his left leg problem was due to spinal stensosis. Dr. Morfesis also reported that Ball’s wife had left him recently, and that consequently Ball was quite depressed. In a letter dated August 28, 2001, Dr. Morfesis identified himself as Ball’s primary treating physician from 1989 to 2000, and wrote: “Charles E. Ball is totally disabled from working as a direct result of the 1994 carpal tunnel injury. Mr. Charles E. Ball sustained this injury at work in the coal mines. In addition he was re-injured in 1996 during an explosion that injured his lower back.”
On August 31, 2000, Dr. David E. Muffly saw Ball for an orthopedic evaluation. Ball complained of back pain dating to the June 1996 injury and continuing problems with carpal tunnel syndrome. Dr. Muffly’s assessment was that Ball had recurrent carpal tunnel syndrome with failed second surgery on the right hand and degenerative disc disease, and that he was disabled. Dr. Muffley noted that Ball could lift nothing heavier than ten pounds, should avoid *867 repetitive use of his hands, and could not use hand controls.
Finally, Ball saw Dr. Robert S. Spangler, of Appalachian Psychological Consultants, on August 1, 2002. Dr. Spangler explained that Ball had experienced chronic low back pain as well as pain and both hips, his left leg, and his neck and shoulder since the 1996 mine accident. Dr. Spangler also noted that Ball “developed bouts of depression since the explosion in 1996 that continues to date. This depression has worsened since 1999 but still traces back to his traumatic injury in the 1996 explosion.”
It is evident that at least seven doctors diagnosed Ball with back pain dating back to the 1996 mining incident. Three doctors and one social worker opined that Ball’s anxiety and depression were attributable in substantial part to that pain. Moreover, not a single doctor has disputed Ball’s contention that his mood disorders were substantially caused by his chronic pain, including his back pain. Some physicians have indicated that there were other stressors in Ball’s life, but none have suggested that his pain was not a substantial factor. Ball is not required to show that the 1996 accident was the sole cause of his disability. See Robertson, 848 F.2d at 476.
In other words, Ball established that pain caused by the 1996 mining accident, in combination with pain from other injuries, was substantially responsible for his depression and anxiety. This suffices under Robertson to satisfy the causation requirement of the 1974 Pension Plan. Furthermore, the plan administrator’s determination that Ball was not entitled to benefits is simply not supported by substantial evidence, as required under our precedent; indeed, it is not supported by any evidence at all. See Baker v. United Mine Workers of America Health & Retirement Funds, 929 F.2d 1140, 1144 (6th Cir.1991). The district court correctly found that the denial of those benefits constituted an abuse of discretion. I therefore respectfully dissent.