## In re KOREAN AIR LINES DISASTER OF SEPTEMBER 1, 1983.

**MDL No. 565.**
**Miscellaneous No. 83–0345.**

United States District Court,
District of Columbia.

June 4, 1996.

Order Certifying Decision for
Interlocutory Appeal July 1, 1996.

11

Juanita M. Madole, Speiser, Krause, Madole & Cook, Irvine, California.

George N. Tompkins, Jr., George N. Tompkins, III, Andrew J. Harakas, Tompkins, Harakas, Elsasser & Tompkins, White Plains, New York, Timothy J. Lynes, Condon & Forsyth, Washington, D.C.

*MEMORANDUM OPINION AND ORDER*

AUBREY E. ROBINSON, Jr., District Judge.

On September 1, 1983, Korean Air Lines ("KAL") flight KE007 was shot down by a Soviet military aircraft, after it had veered off its course into Soviet airspace, killing all 269 passengers. The liability of KAL for those deaths was determined in a multidistrict litigation action in the District Court for the District of Columbia.[1] In that action, a jury found that KAL's "willful misconduct" proximately caused the passengers deaths, thus allowing recovery beyond the Warsaw Convention's $75,000 cap on damages. *See* Warsaw Convention, Art. 25, 49 Stat. 3020; Order of Civil Aeronautics Board Approving Increases in Liability Limitations of Warsaw Convention and Hague Protocol, *reprinted in note following* 49 U.S.C.App. § 1502 (1988 ed.). Following appeals of this action, the individual compensatory damages trials were remanded by the Judicial Panel on Multidistrict Litigation to the original transferor courts. Several actions regarding the recoverable compensatory damages still remain before this Court.

Presently before the Court is Defendant KAL's Motion to Dismiss All Claims for Nonpecuniary Damages. Defendant argues that damages for loss of society, survivor's mental grief, and for pre-death pain and suffering of a decedent are not recoverable. The parties agree that Plaintiffs' claims for loss of society damages must be eliminated in light of *Zicherman v. Korean Air Lines Co., Ltd.,* —— U.S. ——, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996). KAL's Motion raises two issues: (1) whether claims for mental grief, recoverable under Korean law, may be pursued in this Court after a choice of law analysis; and (2) whether survival damages for pre-death pain and suffering may supplement the wrongful death damages available under the Death on the High Seas Act ("DOHSA"), 46 U.S.C.App. § 761 *et seq.*

---

1. An extensive discussion of the facts of this case may be found in *In re Korean Air Lines Disaster of Sept. 1, 1983,* 932 F.2d 1475 (D.C.Cir.), *cert.* denied, 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).

## I. Discussion

Article 17 of the Warsaw Convention makes an airline liable for "damages sustained" in the event of the death of a passenger, it provides:

The carrier shall be liable for *damages sustained* in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat. 3018 (emphasis added).

Until the Supreme Court's decision in *Zicherman,* —— U.S. ——, 116 S.Ct. at 629, various courts struggled with the question of which "damages" are available under the Warsaw Convention. *See e.g., In re Korean Air Lines,* 932 F.2d at 1475 (D.C.Cir.1991); *In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267 (2nd Cir.), *cert. denied, sub nom. Rein v. Pan American World Airways, Inc.,* 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). With *Zicherman* the Court put some of this confusion to rest, holding that "damage" means only "legally cognizable harm" and that "Article 17 leaves it to the adjudicating courts to specify what harm is cognizable." —— U.S. at ——, 116 S.Ct. at 633. The Court found support for its interpretation of "damage" in Article 17 through the express limitations of Article 24 of the Warsaw Convention which provides:

(1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, *without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.*

49 Stat. 3020 (emphasis added). Under the Court's interpretation of Article 24(2) when an "action is brought under Article 17, the law of the Convention does not affect the substantive questions of who may bring suit and what they may be compensated for." *Zicherman,* —— U.S. at ——, 116 S.Ct. at 634. The Court concluded that "Articles 17 and 24(2) of the Warsaw Convention permit compensation only for legally cognizable harm, but leave the specification of what harm is legally cognizable to the domestic law applicable under the forum's choice of law rules." *Id.* at ——, 116 S.Ct. at 637.

### A. Choice of Law

Having concluded that compensable harm is determined by domestic law, the *Zicherman* Court explained that its next logical step would be to determine which sovereign's domestic law applied. The Court did not conduct a choice of law analysis because the parties had previously agreed that the issue of compensable harm was governed by United States law. The Court held, however, that where United States law governed, the Death on the High Seas Act ("DOHSA"), 46 U.S.C.App. § 761 *et seq.* (1988), supplied the substantive law of damages for an aircraft crash on the high sea. *Id.* at ——, 116 S.Ct. at 636.

This Court has not been spared the choice of law question regarding which sovereign's domestic law governs compensable harm. Jurisdiction in these actions is premised on the federal treaty, the Warsaw Convention, 28 U.S.C. § 1331, admiralty, 28 U.S.C. § 1333, and in part on diversity. Here the parties are diverse because the Plaintiffs are citizens of the United States and the Defendant is a foreign nation. In *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941), the Court held that a federal court sitting in diversity must apply the choice of law principles of the state in which it sits. Because jurisdiction in these cases is based only partly on diversity, application of the District of Columbia's choice of law rules is not necessarily required, especially in light of a potential conflict between the District of Columbia and a federal policy. In *O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, ——, 114 S.Ct. 2048, 2055, 129 L.Ed.2d 67 (1994), the Court explained that a special federal rule is justified in "limited situations where there is a 'significant conflict between some federal policy or interest and the use of state law.' "

■ The Court recognizes that there is "no federal general common law," *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), but is guided by the Court of Appeals for the Sixth Circuit's determination that the Warsaw Convention's, "concrete federal policy of uniformity and certainty" would be undermined if a state choice of law rule is applied, and therefore a special federal rule is appropriate to govern this choice of law question. *Bickel v. Korean Air Lines Co., Ltd.,* 83 F.3d 127, 130–31 (6th Cir.1996). In discussing the important federal policy of uniformity and certainty embodied by the Warsaw Convention, the Court of Appeals for the Second Circuit explained:

> The principal purposes that brought the Convention into being and presumably caused the United States to adhere to it were a desire for uniformity in the laws governing carrier liability and a need for certainty in the application of those laws.... Hence, the test to be applied is whether these goals of uniformity and certainty are frustrated by the availability of state causes of action for death and injuries suffered by passengers on international flights. We do not see how the existence of state law causes of action could fail to frustrate these purposes.

*In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267, 1275 (2nd Cir.1991). Application of the United States' various choice of law rules could have a deleterious effect on consistent determinations of the applicable rules regarding damages under the Warsaw Convention. Thus, this Court is convinced that a federal choice of law rule is necessary here.

In the absence of any established body of federal choice of law rules, courts have looked to the Restatement (Second) of Conflict of Laws (1969) (hereinafter "Restatements") as "a source of general choice of law principles and an appropriate starting point for applying federal common law in this area." *See Bickel,* at 130–31; *Harris v. Polskie Linie Lotnicze,* 820 F.2d 1000, 1003 (9th Cir.1987). Section 175 of the Restatements provides a choice of law rule (known as the *lex loci delicti* rule) for a wrongful death action and creates a presumption in favor of law of the location where the injury occurred:

In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatements, § 175. The *lex loci delicti* rule in § 175 is difficult to apply in these cases because "it is not clear whether KE007 was shot down in Soviet airspace, over Japanese territory or in international waters." *In re Korean Air Lines,* 932 F.2d at 1497 (Mikva, J. dissenting). Additionally, the Sixth Circuit recognized that assuming that the former U.S.S.R. was the place the injury occurred, "the U.S.S.R. has ceased to exist ... [and therefore] no longer has a judicially cognizable interest in these matters." Furthermore, the parties have limited their choice of law arguments to whether the United States or the law of Korea applies, and the Court finds that these countries should be the focus of the choice of law determination.

In lieu of the *lex loci* rule, § 6 of the Restatements endorses a "most significant relationship" or "center of gravity" test, which requires consideration of several factors to determine which state has a more significant interest in having their law applied. "The governmental interest approach seeks to identify which jurisdictions may have an actual interest in having their substantive law apply to a particular controversy...." *See In re Korean Air Lines,* 932 F.2d at 1497 (Mikva, J. dissenting). The relevant factors of § 6 include:

(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in the determination and application of the law to be applied.

When considering the contacts of the two countries the Court notes that South Korea is KAL's place of incorporation, its principal place of business, and the place where its crews are trained. On the other hand, the United States is the place of embarkation for many of the passengers, where the flight originated, and where all of the tickets were purchased.

■ Though both the United States and South Korea have significant contacts, consideration of the factors in § 6 convinces this Court that the United States law should govern these cases. The Court agrees with the analysis of the Sixth Circuity that "application of United States law supports 'ease in the determination and application of the law applied' " and " 'the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,' " weigh heavily in the favor of this "United States." *Bickel,* at 131. Indeed, "certainty, predictability, and uniformity of result" would be supported because the Supreme Court has already applied the United States law when determining compensatory damages. *See Zicherman,* —— U.S. at ——, 116 S.Ct. at 629; *In re Korean Air,* 932 F.2d at 1475.

Furthermore, this Court agrees that because "these actions arise under the Warsaw Convention, neither nation can legitimately claim to offer greater protection of the 'the basic policies underlying the particular field of law,' or 'the needs of the interstate and international system.' " *Bickel,* at 131. Accordingly, the Court finds that the United States law is the most appropriate when determining the available compensatory damages for these actions.

### B. Loss of Society and Survivor's Grief

■ In light of the Supreme Court's decision in *Zicherman,* that DOHSA, supplies the substantive United States law regarding damages and that loss of society damages are not available under DOHSA this Court concludes that survivor's grief damages are also unavailable.[2] The *Zicherman* Court held that under § 762 of DOHSA recovery in a suit for death under § 761 "shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefits the suit is brought." 46 U.S.C.App. § 762. Following the dictates of DOHSA, the Court concluded that loss-of-society damages, since they are not pecuniary, may not be recovered.

Damages for a survivor's grief are a nonpecuniary form of damages which represents compensation for an emotional response to wrongful death. *Sea–Land Serv., Inc. v. Gaudet,* 414 U.S. 573, 585 n. 17, 94 S.Ct. 806, 815 n. 17, 39 L.Ed.2d 9 (1974). The Supreme Court has previously recognized that al-

2. Because this Court has determined that United States law governs the damages issues in this action and that DOHSA applies, Plaintiffs' argument that mental grief damages are available because Korean law permits claims for such damages is irrelevant.

Additionally, the Court rejects Plaintiffs' assertion that sections 1 and 4 of DOHSA are cumulative. 46 U.S.C.App. §§ 761, 764. Following Plaintiffs' interpretation of DOHSA, they are entitled to recover all pecuniary damages allowed by virtue of § 1 of DOHSA and in addition any damages allowed by Korean law pursuant to § 4. The Court finds that sections 1 and 4 are mutually exclusive rather than cumulative. *See In re Air Crash Disaster Near Bombay, India on Jan. 1, 1978,* 531 F.Supp. 1175 (W.D.Wash.1982); *Bergeron v. Koninklijke Luchtvaart Maatschappij, N.V.,* 188 F.Supp. 594 (S.D.N.Y.1960). Section 1 of DOHSA provides:

Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.

46 U.S.C.App. § 761. Section 4 provides:

Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States. . . .

42 U.S.C.App. § 764. The Court finds that while § 4 permits a cause of action based upon foreign law to be brought in admiralty in federal court, it only applies when foreign law applies pursuant to a choice of law analysis. In this case, it has been determined that United States law governs therefore the Court finds that § 4 is inapplicable and that only § 1 governs damages.

though federal maritime law permits dependent survivors to recover loss of society damages, it precludes survivors from recovering additional damages for their grief or mental injury. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 622, 98 S.Ct. 2010, 2013, 56 L.Ed.2d 581 (1978). Having concluded in *Zicherman* that DOHSA precludes recovery for the non-pecuniary damages such as loss of society, survivor's grief should be similarly unavailable. The Court agrees with the Sixth Circuit that there is no "distinction of which the *Zicherman* Court would have approved that would permit us to conclude that the recovery of one sort of non-pecuniary damages, such as loss of society, is precluded by DOHSA, whereas other sorts of non-pecuniary damages, such as survivor's grief, are not." *Bickel*, at 132.

### C. Survival Actions for Pre–Death Pain and Suffering

Plaintiffs also argue that DOHSA limits recovery for only wrongful death claims and does not preclude additional recovery for pre-death pain and suffering because it is a survival claim.[3] There is no dispute that recovery for the decedents' alleged pre-death pain and suffering is not recoverable under DOHSA.[4] Rather, Plaintiffs argue that their survival claims are distinct from wrongful death claims and are available under general maritime law and can supplement the damages recoverable under DOHSA.

■ This Court disagrees. Although, other courts have allowed a pain and suffering claim to supplement the awards recoverable under DOHSA, it appears to this Court that with *Zicherman*, the Supreme Court has held that DOHSA provides the exclusive remedy for damages which cannot be supplemented with general maritime principles.[5]

The Court explained "where DOHSA applies neither state law, nor general maritime law, can provide a basis for recovery of loss-of-society damages." *Zicherman*, —— U.S. at ——, 116 S.Ct. at 636 (citations omitted); *See also Higginbotham*, 436 U.S. at 618, 98 S.Ct. at 2011 (federal maritime law is not available to supplement DOHSA because with DOHSA Congress specifically spoke to the issue of damages and provided damages only for pecuniary losses, the Court may not provide supplementary damages beyond that authorized by Congress). Therefore, in light of the Supreme Court's decision in *Zicherman*, this Court finds that the non-pecuniary pain and suffering damages may not supplement the damages available under DOHSA.

### II. Conclusion

For the foregoing reasons, it is by the Court this 4th day of June, 1996,

**ORDERED,** that Defendant's Motion to Dismiss All Claims for Non–Pecuniary Damages be and hereby is **GRANTED;** and it is

**FURTHER ORDERED,** that Plaintiff's claims for loss of society damages, mental anguish and grief, and pre-death pain and suffering be and hereby are **DISMISSED** with prejudice.

### *ORDER CERTIFYING DECISION FOR INTERLOCUTORY APPEAL*

Upon consideration of the Joint Motion for an Order Amending Order of June 4, 1996 to Include Statutory Language From 28 U.S.C. § 1292(b) to Certify the Court's Order of June 4, 1996 for an Interlocutory Appeal and a Joint Motion for a Stay, it is by the Court this 1st day of July, 1996,

---

**3.** "A wrongful death cause of action belongs to the decedent's dependents.... A survival action, in contrast, belongs to the estate of the deceased (although it is usually brought by the deceased's relatives acting in a representative capacity) and allows recovery for the injury to the deceased from the action causing death." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622 (3d Cir.1994); *aff'd* —— U.S. ——, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996).

**4.** DOHSA is a wrongful death statute that restricts recoverable to the "pecuniary loss sustained." 46 U.S.C.App. § 762.

**5.** In cases decided prior to *Zicherman*, several courts used general maritime survival principles to supplement the pecuniary damages available under DOHSA, with pain and suffering damages. *See e.g., Barbe v. Drummond*, 507 F.2d 794, 800 (1st Cir.1974); *McAleer v. Smith*, 791 F.Supp. 923, 926 (D.R.I.1992).

**ORDERED,** that the above-captioned actions be and hereby are **STAYED** until further Order of the Court; and it is

**FURTHER ORDERED,** that the Joint Motion for certification of this Court's Order of June 4, 1996 to the Court of Appeal for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), be and hereby is **GRANTED**; and it is

**FURTHER ORDERED,** that this Court's Order of June 4, 1996 be and hereby is amended to state:

### Certification for Interlocutory Appeal

Generally, appellate review of a trial court's decision is only appropriate upon an appeal from a final judgement in the trial court, that is, only after all the issues involved in a particular lawsuit have been finally determined. *See* F. James and G. Hazard, *Civil Procedure* § 12.4 at 657 (1985). However, in 1958 Congress created a statutory exception to the final judgment rule, codified at 28 U.S.C. § 1292(b). Section 1292(b) provides in pertinent part:

When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order . . . .

Thus, an interlocutory appeal can be properly certified only where the district court and the appellate court agree that (1) an order involves a "controlling question of law"; (2) this controlling question of law is one upon which "there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The within actions are governed by the Warsaw Convention. Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C. § 1502. The liability of Korean air for the death of all passengers on Korean Air Lines Flight KE007 has previously been established. *See In re Korean Air Lines Disaster of September 1, 1983,* 932 F.2d 1475 (D.C.Cir.), *cert. denied* 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). The actions remaining in this Court assert recovery for damages and are postured following the Supreme Court's decision in *Zicherman v. Korean Air Lines Co., Ltd.,* — U.S. ——, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996), which held that the wrongful death cause of action is governed by the Death on the High Seas Act, 46 U.S.C.App. § 761 *et seq.* ("DOHSA"). Specifically, Plaintiffs claim a right to recover damages for mental anguish and grief pursuant to 28 U.S.C. § 764 under Korean law and that there is a general maritime survival action separate and distinct from the wrongful death action under DOHSA which may co-exist with the wrongful death action.

The Court has granted Korean Air Lines' Motion to Dismiss all claims for nonpecuniary damages holding that mental anguish and grief damages may not be recovered and that a general maritime survival action may not supplement wrongful death damages under DOHSA. The pending issues have never been addressed by the United States Court of Appeals for the District of Columbia and were not addressed in *Zicherman,* — U.S. at ——, 116 S.Ct. at 629.

The parties are of the opinion that the recoverable damages issues involve controlling questions of law which are of significant importance to the remaining damages trials currently pending in this Court and that there are substantial grounds for differences of opinion. The parties are further of the opinion that an immediate appeal from this Order will materially advance the ultimate termination of the remaining litigation.

This Court agrees. During the many years that this litigation has been in this Court and in the other district courts and circuit courts across the United States questions regarding recoverable damages have repeatedly confounded the courts. Complicating the determination of available damages are circuit splits and the interplay between the Warsaw Convention, DOHSA, and general maritime law. With the Supreme Court's opinion in *Zicherman,* a major step

was taken towards resolving the difficult question of available damages under the Warsaw Convention. Guidance from the Court of Appeals for the District of Columbia Circuit regarding: (1) the availability of mental anguish and grief damages; and (2) the availability a survival action for pain and suffering damages in light of *Zicherman*, will hopefully assist in terminating these actions once and for all. Therefore the Court certifies this Order dismissing Plaintiffs' claims for nonpecuniary damages for an immediate interlocutory appeal.

It is **FURTHER ORDERED,** that above-captioned cases be and hereby are certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) because they involve controlling questions of law as to which there is substantial ground for difference of opinion and an immediate appeal therefrom may materially advance the ultimate termination of this litigation.