**In re AIR CRASH OFF LONG ISLAND, NEW YORK, ON JULY 17, 1996.**

No. 96 Civ. 7986 (RWS).
MDL No. 1161 (RWS).

United States District Court,
S.D. New York.

Nov. 12, 1998.

Kreindler & Kreindler, New York City, Lee S. Kreindler, Steven R. Pounian, James P. Kreindler, Robert J. Spragg, Jacqueline M. James, of counsel, Speiser, Krause, Madole, Nolan & Granito, New York City, Frank H. Granito, Jr., Frank H. Granito, III, of counsel, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Jerome L. Skinner, of counsel, Baumeister & Samuels, New York City, Michael F. Baumeister, Douglas A. Latto, of counsel, Donald J. Nolan, Nolan Law Group, Chicago, IL, Schaden, Katzman & Lampert, Broomfield, CO, Richard Schaden, of counsel, for Plaintiffs.

Haight Gardner Holland & Knight, New York City, Randal R. Craft, Jr., William C. Brown, III, Alan D. Reitzfeld, of counsel, for Trans World Airlines, Inc.

Davis, Scott, Weber & Edwards, New York City, George F. Hritz, Cynthia A. Feigin, of counsel, Perkins Coie, Seattle, WA, Keith Gerrard, Steven S. Bell, Jay S. Brown, of counsel, for the Boeing Company.

Dombroff & Gilmore, Washington, DC, Mark A. Dombroff, Dane B. Jaques, of counsel, for Hydroaire, Inc. & Crane Co.

## OPINION

SWEET, District Judge.

Defendants The Boeing Company ("Boeing"), Trans World Airlines, Inc. ("TWA"), and Hydro–Aire, Inc. ("Hydro") have moved to certify the June 2, 1998 opinion of this Court (the "Opinion") for immediate appeal under 28 U.S.C. § 1292(b). For the reasons set forth below, the motion is granted.

### The Parties

The plaintiffs in these actions are family members or administrators of the estates of passengers who died in the crash of TWA Flight 800 on July 17, 1996 (the "Plaintiffs").

TWA, a Delaware State corporation with its principal place of business in the State of Missouri, operated the aircraft that crashed on July 17, 1996.

Boeing, a Delaware State corporation with its principal place of business in the State of Washington, initially designed, manufactured, tested and in 1971 sold the Boeing 747–100 aircraft operated by TWA that crashed on July 17, 1996.

Hydro, a division of Crane Co., a Delaware State corporation with its principal place of business in the State of Connecticut, manufactured aircraft components, including a boost fuel pump that was allegedly incorporated into the Boeing 747–100 aircraft that crashed on July 17, 1996.

### Prior Proceedings

This multidistrict air crash litigation was initiated on October 24, 1996 by the Plaintiffs whose decedents died in the crash of TWA Flight 800 on July 17, 1996, from New York to Paris ("TWA 800"). The disaster occurred eight miles off the coast of Long Island. Pretrial conferences were held, and orders entered relating to discovery. The Multidistrict Panel on February 19, 1997, assigned all cases arising out of the crash to this Court. Some 206 actions have been so assigned.

On July 1, 1997, the Defendants moved to dismiss all claims other than those based upon the Death on the High Seas Act, 46 U.S.C. §§ 761–767 ("DOHSA"). Because of the pendency of proposed legislation, and upon the agreement of the parties, the motions were argued on March 8, 1998, and considered fully submitted at that time. The Opinion which denied Defendants' motion and which is the subject of the instant motion, was filed on June 2, 1998.

The Defendants moved to certify the Opinion for an intermediate appeal on August 28, 1998, and argument was heard on the motion on October 21, 1998, at which time the motion was considered fully submitted.

1. The relevant section provides that:
   When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that

### The Opinion Sought to be Certified

The Opinion held in a case of first impression in this Circuit that DOHSA applies only where death occurs both on the high seas and beyond a marine league from the shore. DOHSA was held to be inapplicable to the crash of TWA 800 which occurred within the twelve mile territorial waters of the United States and beyond a marine league (three miles) offshore.

The Opinion resolved the arguments of the parties on the interpretation of the language of DOHSA, the structure of the statute, and its legislative history. The effect of the Opinion was to permit recovery of non-pecuniary losses such as loss of society, survivor's grief, pre-death pain and suffering and punitive where applicable under the governing law to be determined by subsequent determinations, rather than to limit recoveries to the pecuniary damages provided under DOHSA.

The Opinion in the interests of consistency concluded that the "high seas" were non-territorial waters and that the Executive Proclamation of President Reagan in 1988, Proclamation No. 5928, 54 Fed.Reg. 774 1988 (the "Proclamation") changed the boundaries of United States' territorial waters. The Opinion left for future determination the choice of applicable law other than DOHSA and the remaining choice of law issues were not briefed by the parties irrespective of DOHSA.

### Discussion

#### I. The Opinion Meets the Standard for Certification

■ Although the final judgment rule normally precludes interlocutory appeals, 28 U.S.C. § 1292(b) creates an important exception. Section 1292(b) provides that a district court may certify an interlocutory order for appeal if it is of the opinion that: (1) the order "involves a controlling question of law"; (2) "as to which there is a substantial ground for difference of opinion," and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." [1]

such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance

In considering a request for certification, the district court must carefully assess whether each of the three conditions for certifications is met. *See German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y.1995); *see also Gottesman v. General Motors Corp.*, 268 F.2d 194, 196 (2d Cir.1959) (certification is to be "strictly limited to the precise conditions stated in the law"). The determination of whether § 1292(b) certification is appropriate under the above standards is in the discretion of the trial court. *See Ferraro v. Secretary of U.S. Dept. of Health and Human Services*, 780 F.Supp. 978, 979 (E.D.N.Y.1992); 16 Charles A. Wright, *Federal Practice and Procedure* § 3929 at 371 & n. 27 (1996).

■ As set forth below, whether DOHSA applies to the TWA 800 crash is one of the controlling questions of law affecting the naming of the appropriate plaintiffs and beneficiaries and the availability and measure of damages.

■ The second requirement of § 1292(b) is met because there is a substantial ground for difference of opinion in this case of first instance. The parties agree that DOHSA provides the exclusive remedy

> [w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States.

46 U.S.C.App. § 761. The parties disagree on whether TWA 800 was lost "on the high seas," and there is a substantial basis for that difference of opinion. This Court concluded, for the first time in this particular factual context involving an aircraft disaster that by using the term "high seas," Congress limited DOHSA's application to "non-sovereign waters," (Opinion at 17), *i.e.*, "international waters not subject to the dominion of any single nation," *id.* (quoting *United States v. Louisiana*, 394 U.S. 11, 23, 89 S.Ct. 773, 22 L.Ed.2d 44 (1969)). The Opinion resolved strongly divergent views of DOHSA's language, its

legislative history, and the 78 years of judicial decisions.

■ Finally, the ultimate termination of this multidistrict litigation will be materially advanced by an immediate appeal, rather than postponing review until after the individual cases are remanded for trial to district courts throughout the country. "[T]he better practice is to allow ... appeal prior to remand." 17 James W. Moore, Moore's Federal Practice § 112.06[e] (3d ed.1998). As this Court has noted, "[c]ertification is only warranted in 'exceptional cases,' where early appellate review 'might avoid protracted and expensive litigation.'" *In re Lloyd's American Trust Fund Litig.*, 1997 WL 458739, at *3, 1997 U.S.Dist. LEXIS 11937, at *8 (S.D.N.Y. Aug. 9, 1997) (quoting *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F.Supp. 170, 172 (S.D.N.Y.1987)). The TWA 800 litigation is just such an exceptional case, particularly given the prospect of protracted litigation and multiple appeals in courts throughout the country following the Supreme Court's recent decision in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998).

### A. *The Scope of DOHSA is a Controlling Question of Law*

Whether the cases arising from TWA 800 are governed by DOHSA or some other law presents a controlling question of law as to (1) whether this is a civil case or a suit in admiralty; (2) who are the proper plaintiffs; (3) who are the beneficiaries; (4) what damages, if any, are recoverable and how the damages will be apportioned; (5) which of the beneficiaries may need to establish dependency; and (6) what is the applicable statute of limitations against the manufacturing defendants. 46 U.S.C.App. § 761. The Defendants also urge that the applicability or not of DOHSA will determine whether trial will be by jury or the Court, an issue not briefed by the parties or considered in the Opinion.

---

the ultimate termination of the litigation, he shall so state in writing such order. 28 U.S.C. § 1292(b).

■ The TWA 800 litigation will proceed, of course, whatever is determined on appeal, "resolution of an issue need not necessarily terminate an action in order to be 'controlling.'" *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 24 (2d Cir.1990). There is no reason for an intermediate appeal to delay the ongoing discovery presently underway. However, a ruling on the Opinion will still "significantly affect the conduct of the action." *In re Lloyd's American Trust Fund Litig.,* 1997 WL 458739, at *4, 1997 U.S.Dist. LEXIS 11937, at *11 (citing *Klinghoffer,* 921 F.2d at 24). Similarly, by eliminating the threat of reversal by the Second Circuit after final judgment, an order affirming this Court's Opinion would "significantly affect the conduct of the action." Because the Opinion resolved a controlling issue of law and thus satisfies the first requirement for interlocutory appeal under 28 U.S.C. § 1292(b) is satisfied.

■ Certification under § 1292(b) is also appropriate where, as here, the underlying motion raises a purely legal question about which there are no triable issues of fact. The parties agree that TWA 800 was lost more than a marine league from the shore of New York and within the United States territorial limit as defined by the Proclamation.

### B. *There is a Substantial Ground for Difference of Opinion Concerning the Scope of DOHSA*

The parties are in sharp disagreement with respect to each determination contained in the Opinion, and it is undisputed that there were excellent arguments and a number of authorities presented by highly skilled counsel. The Congress has sought to resolve these differences of opinion, but to date has failed to do so although legislation is presently pending in both Houses of Congress.

The Opinion sought to rehearse and resolve these differences presented for the first time in this Circuit in this factual context. No further delineation of the differences beyond the Opinion itself would seem useful in deciding this motion except to note that the Court remains persuaded even after study of the Defendants' able memorandum that the correct result was reached, at the same time being acutely aware of the difficulties in resolving the divergent opinions presented.

### C. *Immediate Appeal Will Advance the Ultimate Termination of the Litigation*

Some of the 200 TWA 800 cases were filed in this district and are pending before this Court for coordinated or consolidated pretrial proceedings pursuant to Rule 15 of the Local Rules Governing the Division of Business Among District Judges. An equal number were filed in (or removed to) other district courts scattered throughout the country and located in several different federal circuits and transferred to this Court pursuant to 28 U.S.C. § 1407(a) and the multidistrict litigation rules. Indeed, it appears that appeals from TWA 800 cases might come before every circuit court of appeals except the Fourth Circuit, the Tenth Circuit, and the D.C. Circuit. Delaying review would burden not only the parties, but the judicial system itself. As noted by one leading treatise:

> The [Judicial Panel on Multidistrict Litigation] and the courts properly hold the view that if a party wishes to appeal a decision of the transferee court, the better practice is to allow the appeal prior to remand.

17 James W. Moore, *Moore's Federal Practice* § 112.06[e] (3d ed.1998) (citing *id.* § 112.07[4] ("Once an action is remanded to the transferor district, it will be the court of appeals for the transferor district that will have appellate jurisdiction over any unreviewed matters."); *In re Food Lion, Inc.,* 73 F.3d 528, 532–33 (4th Cir.1996)).

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) imposes a duty on the Judicial Panel on Multidistrict Litigation to remand all actions to the original transferor districts at or before the conclusion of pretrial proceedings and bars a district court from using 28 U.S.C. § 1404(a) to transfer such cases to its own docket for trial. 523 U.S. at ——, 118 S.Ct. at 959. Consequently, absent an interlocutory appeal to the Second Circuit, the parties and numerous district courts throughout the country will face protracted litigation over the applicability of

DOHSA. Interlocutory appeal under § 1292(b) may well serve to prevent just this type of inefficiency:

The institutional efficiency of the federal court system is among the chief concerns underlying § 1292(b). Because the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called "big" cases.

*In re Lloyd's American Trust Fund Litig.,* 1997 WL 458739, at *3, 1997 U.S.Dist. LEXIS 11937, at *9 (citations omitted).

In certifying for interlocutory appeal the DOHSA issues that arose in the KAL 007 litigation, the United States District Court for the District of Columbia noted:

During the many years that [the KAL Flight 007 litigation] has been in this Court and in other district courts and circuit courts across the United States questions regarding recoverable damages have repeatedly confounded the courts. Complicating the determination of available damages are circuit splits and the interplay between the Warsaw Convention, DOHSA, and general maritime law.

*In re Korean Air Lines Disaster of Sept. 1, 1983,* 935 F.Supp. 10, 16 (D.D.C.1996), *aff'd,* 117 F.3d 1477 (D.C.Cir.1997), *aff'd,* — U.S. ——, 118 S.Ct. 1890, 141 L.Ed.2d 102 (1998).

For example, a single DOHSA issue in the Korean Airlines litigation, whether pre-death pain and suffering is recoverable, was addressed by the Supreme Court[2] and three different circuit courts of appeal.[3] Numerous district courts faced related evidentiary and reasonableness issues that might well have been avoided by a consolidated interlocutory appeal.[4] It took fifteen years to resolve a legal issue that was common to all

plaintiffs with respect to that tragic crash. Intermediate review pursuant to § 1292(b) might go far to obviate such a result in this litigation.

### Conclusion

The litigation arising from the loss of TWA 800 is difficult and complicated, and may burden the parties, this Court, and other federal trial and appellate courts for some time to come. Interlocutory appeal of the Opinion concerning the applicability of DOHSA should materially advance the ultimate termination of this litigation, particularly, of course, in the view of this Court, if happily the Opinion should be affirmed. The Opinion contains a controlling question of law, and there is a substantial ground for difference of opinion. The Opinion is therefore certified for an immediate appeal.

It is so ordered.

---

2. *Dooley v. Korean Air Lines Co.,* — U.S. ——, 118 S.Ct. 1890, 141 L.Ed.2d 102 (1998).

3. *Dooley v. Korean Air Lines Co.,* 117 F.3d 1477 (D.C.Cir.1997), *aff'd,* — U.S. ——, 118 S.Ct. 1890, 141 L.Ed.2d 102 (1998); *Bickel v. Korean Air Lines Co.,* 83 F.3d 127 (6th Cir.), *different results reached on reh'g,* 96 F.3d 151 (6th Cir. 1996), *cert. denied,* — U.S. ——, 117 S.Ct. 770, 136 L.Ed.2d 716 (1997); *Saavedra v. Korean Air Lines Co.,* 93 F.3d 547 (9th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 584, 136 L.Ed.2d 514 (1996).

4. *See, e.g., Hollie v. Korean Air Lines Co.,* 1994 WL 38785, 1994 U.S.Dist. LEXIS 1124 (S.D.N.Y. Feb. 7, 1994) ("[W]e recognize that the result of the appeal in *Zickerman v. Korean Air Lines* ..., which is presently pending before the Second Circuit, may affect the force of our ruling" on the sufficiency of plaintiff's evidence of conscious pain and suffering.), *aff'd in part, rev'd in part, and remanded,* 60 F.3d 90 (2d Cir.1995), *vacated and remanded,* 516 U.S. 1088, 116 S.Ct. 808, 133 L.Ed.2d 754 (1996).